CHARLES H. MASON ET AL. *v.* JOHN A. LEE ET AL.

[50 South. 625.]

RELIGIOUS SOCIETIES. *Churches. General council. Control. Excommunication. Injunction of majority by minority. Heresy.*

A "general council," composed of representatives of local churches of a sect, has no power to excommunicate the pastor of a local church for preaching doctrines deemed heretical, in the absence of all evidence that it had authority over the local churches; and its pronunciamento of excommunication will not, at the suit of a minority of the church members, warrant enjoining the pastor and his followers in the congregation from using the church property.

FROM the chancery court of Holmes county.

HON. JAMES F. McCOOL, Chancellor.

Lee and others, minority members of a church congregation, appellees, were complainants in the court below; Mason and

others, the pastor of the church and its trustees, appellants, were defendants there. From a decree in complainants' favor, enjoining defendants from using the church property, defendants appealed to the supreme court.

In 1896 there was established in Lexington, Miss., a negro church called the "St. Paul Church of God," professing the Christian religion, but undenominational, claiming no creed except the Bible. Mason, one of the appellants, was selected as its pastor, and continued as such until the institution of this suit. At the time of its organization the church was purely congregational, and subject to the rules and regulations of no council or other organized body. A number of churches of similar persuasion sprang up, and in the year 1907 a convention of ministers and other members was held in Jackson, Miss., which undertook to adopt rules and regulations for the various churches of this sect. Soon after the organization of the St. Paul Church of God, trustees were appointed, and church property and effects were acquired, a lot was purchased, and a house of worship erected; the property being held in the name of the trustees. In this building the congregation assembled for worship until the institution of this suit.

This suit was instituted in October, 1908, by the appellees, fifty in number, who were minority members of the St. Paul Church of God, some of them being trustees, against Mason, the pastor, and two trustees of the church. The bill of complaint charged that "In 1907 Mason had visited Los Angeles, Cal., where he became imbued and possessed of a rank and dangerous heresy and superstition, claiming that the spirit of God had descended upon him and given him the power to speak in an unknown tongue." It alleged, further, that after his return to Lexington a schism arose in the sect at large, led and fostered by Mason, who had commenced to preach and propagate his new doctrine and to convert members of his congregation thereto. It further alleged that this unknown tongue, which he spoke and pretended to interpret, is "neither a lan-

guage living nor dead, known nor unknown, and is not express-
ive of any objects, thought, or feeling, but is merely a gibberish
and jargon of vocal and nasal and gutteral sounds, and is in
reality the most transparent, flimsy and ridiculous humbug,"
and that such blasphemy and heresy is objectionable to the
faithful members of the church (the complainants) ; that said
Mason is seeking to establish his new faith, which is called the
"Los Angeles Parham Gift of Tongue Baptism," as the faith
of the St. Paul Church of God ; and that the general council of
their church, which met in Jackson, Miss., in 1907, had con-
demned this heresy, and denounced the teachings of Mason, and
warned the faithful against his preaching; and that, in spite of
the protests of the council, Mason had persisted in his faith, and
had by said council been excommunicated. They exhibit certain
orders of the general council in condemnation of Mason's con-
duct, and also what purports to be the rules of government of
the various churches of this particular sect.   The prayer of the
bill was that the defendants be enjoined from exercising any
rights of ownership or control over the property of the St. Paul
Church of God, and from the use of same, either for temporal
or spiritual purposes.

The defendants answered, denying that they were guilty of
any heresy or schism, and denying the right of the general coun-
cil to depose or attempt to excommunicate Mason, and denying
the right of said council to interfere in any way with the St.
Paul Church of God, which it is charged is purely congrega-
tional and undenominational, and not responsible to any council
whatever.   They denied the right of the council to interfere with
the local government of the church in the selection of its pastor,
claiming that no such supervision was ever contemplated, or,
in fact, delegated to the general council.   They denied that
there are any rules of government of the church, except the
voice of the majority of its own congregation, which is in ac-
cordance with Mason's preachings and teachings.   They de-
nied that they are seeking to establish a new faith, but claim

Biblical authority for hoping, as a reward for their faith and unceasing prayer, to enjoy certain promised blessings, among which are "those mysterious manifestations of the Divine Spirit referred to as 'working of miracles,' 'prophecy,' 'discerning of spirits,' 'divers kinds of tongues.'" The defendants further alleged that they have offered to divide time with the complainants in the use of the building, but are unwilling to give up its use, since they are themselves entitled to conduct and govern it in accordance with the wishes of the majority.

*Tackett & Elmore,* for appellants.

The secular courts of this state do not exercise ecclesiastical jurisdiction. They will not undertake to determine what the faith or creed of "St. Paul Church of God" is. *Mount Helm Baptist Church v. Jones,* 79 Miss. 500; *Dees v. Moss-Point Baptist Church* (Miss.), 17 South. 1; *Smith v. Charles.* (Miss.), 24 South. 968.

The decisive question is: Where lies the supreme authority of St. Paul Church of God, and what does that authority hold with reference to the doctrine and teachings of Mason?

Appellees allege that the general doctrine of the church is the supreme authority; appellants insist that the general council has no authority whatever over St. Paul Church of God, and that it is wholly congregational, is undenominational, and that the majority of its members constitute the supreme authority of the church. The issue was thus sharply defined and distinctly made. The burden of proof was on appellees, complainants. There was no proof whatever to show, or tending to show authority in the general council. On the contrary the evidence unmistakably demonstrated that supreme authority was vested in the congregation acting by a majority of the members of the church.

Mason, appellant, was also the pastor of a church in Tennessee and the identical question before this court was decided by

the supreme court of that state in a case in which the identical Mason was a party.   See *Avaunt v. Mason,* MSS. opinion here-with filed.

*Boothe & Pepper,* for appellees.

This record discloses:

(1) That appellants have departed from the faith, doctrines, and teachings of "St. Paul Church of God" as originally organized and established.

(2) That this fact has been adjudicated by the highest authority of the "Church of God," in the state of its organization.

(3) That Mason as a participant in the supreme council of the sect, holding at one time an exalted position therein, is estopped from repudiating its authority.   *Smith v. Pedigo,* 145 Ind. 392; *Bear v. Heasly,* 98 Mich. 279; *Mount Zion B. Church v. Webster,* 83 Iowa, 138; *Kreeker v. Shurley,* 163 Pa. 534; *Fuchs v. Meisil,* 102 Mich. 357.

Argued orally by *H. H. Elmore,* for appellant.

SMITH, J., delivered the opinion of the court.

There is no sufficient evidence in this record to show that a "general council" was in fact ever legally organized, or that, if it was, it was invested with any authority over the local churches, either by direct action of the churches, or by the action of the duly authorized representatives thereof; and particularly is this true with reference to the local church at Lexington, known as the "St. Paul Church of God."

The decree of the court below is therefore *reversed and the cause remanded.*